| | | |
|---|---|---|
| STANUEL L. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 CV 7383 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stanuel L. Thomas alleges that his employer, Defendant Norfolk Southern Railway Company, terminated his employment on the basis of his age and race in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* R. 1.[1] Thomas also alleges that the termination was, at least in part, motivated by retaliation for his earlier race-discrimination complaints, and that he was subjected to a hostile work environment in violation of Title VII.[2] *Id.* Norfolk moves for summary judgment on all counts. R. 24. For the reasons below, Norfolk's motion is granted.

## I.

In deciding this motion for summary judgment, the Court views the evidence in the light most favorable to Thomas and draws all reasonable inferences in his favor.

---

[1]Citation to the record is "R." followed by the entry number.

[2]The Court has subject matter jurisdiction of this federal-question case under 28 U.S.C. § 1331.

*Wis. Cent. Ltd. v. Shannon,* 539 F.3d 751, 756 (7th Cir. 2008). Thomas is an African-American man born in 1954. R.26, Def.'s Stmt. of Facts (DSOF) ¶ 1. Thomas began his employment with Norfolk's predecessor in March 1979 as a brakeman. *Id.* ¶ 5. Thomas was promoted to conductor in November 1987 and to locomotive engineer in January 1998. *Id.* As an engineer for Norfolk, Thomas was subject to the collective bargaining agreement between Norfolk and the Brotherhood of Locomotive Engineers and Trainmen. *Id.* ¶ 6. Thomas was fired from his locomotive engineer position on May 29, 2009, following an incident that occurred on May 11, 2009. *Id.* ¶¶ 21, 25.[3] On a number of occasions between 1999 and 2008, Thomas made complaints to his supervisors about disparate treatment. *Id.* ¶¶ 66-79.[4]

On May 11, 2009, Thomas was assigned to work as the engineer on a train that was scheduled to travel over tracks owned by another railway, Canadian National. *Id.* ¶ 16. Ricky Connelley, a Caucasian male born in 1963, was assigned as the conductor on the train. *Id.* ¶ 17. Thomas and Connelley were briefed prior to embarking on the assignment, and received copies of a Tabular General Bulletin Order issued by Canadian National. *Id.* ¶ 18. The Bulletin Order contained the Canadian National's rules and instructions that Thomas and Connelley were required to follow. *Id.* ¶ 9. The May 11, 2009 Bulletin Order that they received contained a notation that a particular

---

[3]As explained below, Thomas was reinstated as an engineer following an arbitration hearing, and eventually returned to work at Norfolk. DSOF ¶¶ 36, 43.

[4]A more detailed analysis of the particular evidence the parties offer with respect to these complaints is detailed below in Part III.C.

area of track was under "work project protection." *Id.* ¶ 18. This notation meant that workers might be on or near the track. *Id.* ¶ 19. Before Thomas and Connelley went into such an area, the Bulletin Order required them to contact the employee in charge of the work site. *Id.* ¶ 18. Thomas made notes on his copy of the Bulletin Order, including a note that read "LOOK" on the section in question. *Id.* ¶ 20.

While on this assignment, Norfolk alleges that Thomas and Connelley took their train onto the area under "work project protection" without contacting the employee in charge of the site. *Id.* ¶ 21. Thomas admits that he occupied the track without first contacting a Canadian National employee at the work site, but disputes that the section of the Bulletin Order relied on by Norfolk applied to his train. R. 28, Pl.'s Resp. Def.'s Stat. of Facts (PSOF) ¶ 21. After the incident, Thomas and Connelley were both removed from service pending the outcome of an investigation. DSOF ¶ 22. Thomas appeared at an investigatory hearing on May 19, 2009, pursuant to his collective bargaining agreement. *Id.* ¶¶ 23-24. Following the hearing, Norfolk fired Thomas and revoked his locomotive engineer certificate for 30 days, based on a finding that Thomas had occupied a main track without authority. *Id.* ¶ 25. Connelley was also fired because of the incident. *Id.* ¶ 27.

Before 2006, occupying a main track without authority was typically punishable by a 30-day suspension. *Id.* ¶ 15. Starting in 2006, because of what Norfolk perceived as an excess of these violations, Norfolk reclassified the violation as a "major" offense and began punishing an offending employee with termination of employment. *Id.*

Thomas was notified of this policy change. *Id.* ¶ 13. On September 26, 2006, Thomas was reminded that occupying a main track without authority was a major offense. *Id.*

The parties argue over whether certain other Norfolk employees are or are not relevant to proving discrimination. The pertinent information concerning those employees are as follows[5]:

- Connelley, who was partnered with Thomas on May 11, 2009, was also fired as a result of the incident. *Id.* ¶ 27. Connelley is Caucasian and was 46 years old at the time of his firing. *Id.* ¶¶ 27, 28.

- Kevin Davis was a former Norfolk engineer, is Caucasian, and was born in 1957. *Id.* ¶ 48. In March 2009, Davis was fired by Norfolk for the same violation–occupying a main track without authority. *Id.* ¶ 49. He was 52 years old when he was fired. *Id.* ¶ 50. Davis also received a 30-day suspension for occupying a track without authority in 2005. *Id.* ¶ 51.

- Robert Cowgill is a conductor for Norfolk, and is Caucasian. *Id.* ¶¶ 52, 53. Cowgill received a 30-day suspension for occupying a main track without authority in 2005. *Id.* ¶ 52. He was 22 years old at the time. *Id.* ¶ 53.

- Chuck Taylor, who is Caucasian and was born in 1945, received a 30-day suspension for a similar offense (proceeding by a red signal without permission) in 2004. *Id.* ¶ 59.

- Johnnie Golston, who is African-American and was born in 1949, received a 30-day suspension for a similar offense (proceeding by a red signal without permission) in 2004. *Id.* ¶ 60.

- Otty (Butch) Barringer, who is Caucasian, received a 30-day suspension for a similar offense (proceeding into a limited area without permission) in 1999. *Id.* ¶¶ 61, 63.

---

[5]It appears that the basis for this information was Thomas's answers to interrogatories propounded by Norfolk and his deposition testimony. *See, e.g.*, DSOF ¶ 58. The Court notes that Thomas did not object to any of Norfolk's factual contentions about the comparators, nor did he provide information about any additional comparators in his Local Rule 56.1(b) statement.

- Steve Young, who is Caucasian, received a 15-day suspension for a similar offense (proceeding into a limited area without permission) in 1999. *Id.* ¶¶ 62, 63.

Thomas admits that he has no first-hand, personal knowledge of the information regarding Davis, Cowgill, Taylor, Golston, Barringer*,* and Young. *Id.* ¶ 58.

After Thomas was fired, he and his union appealed the decision under the collective bargaining agreement. *Id.* ¶ 29. Following an arbitration hearing in July 2010, Thomas was reinstated and returned to work on April 19, 2011. *Id.* ¶¶ 35-36, 43.[6] In the meantime, in November 2009, Thomas filed a charge of discrimination based on race and age, retaliation, and hostile work environment with the Equal Employment Opportunity Commission, through the Illinois Department of Human Rights. R. 1-1, Compl. Exh. A. In August 2011, the EEOC issued a right-to-sue letter, and this action followed. R. 1-2, Compl. Exh. B.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). All facts, and any inferences

---

[6]Norfolk explains in detail that it offered to reinstate Thomas in September of 2009 on a leniency basis, but Thomas refused the offer. DSOF ¶ 29-31. Because the Court grants Norfolk's motion for summary judgment, it is unnecessary to decide whether Thomas properly mitigated his damages, and a detailed discussion of those facts is therefore omitted.

to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent. Ltd.,* 539 F.3d at 756. The Court will not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## III.

Thomas alleges that Norfolk: (1) discriminated against him because of his age; (2) discriminated against him because of his race; and (3) retaliated against him for his earlier complaints about race discrimination. R. 1, Compl.[7] The Court will address each claim in turn.

## A.

The Age Discrimination in Employment Act (ADEA) prohibits employers from discriminating against workers who are 40 or older on the basis of their age. 29 U.S.C. § 621 *et seq*. To survive a motion for summary judgment on his age discrimination claim, Thomas must produce evidence that would allow a reasonable jury to find that but for his age, Norfolk would not have subjected him to an adverse employment action. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177-78 (2009); *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). An employee suing under the ADEA may show discrimination directly or indirectly. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). Thomas effectively admits that he has no direct evidence of age discrimination, R. 29, Pl.'s Resp. Br. at 12, so he must prove age

---

[7]Thomas also did try to allege a hostile work environment claim, but it was tucked into the part of the complaint dealing with retaliation. In any event, for reasons discussed in Part IV of this opinion, the Court considers this claim waived.

discrimination by the indirect method using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green.  McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

Under the indirect method of proof, Thomas must first establish a prima facie case of age discrimination by demonstrating that: (1) he is a member of a protected class; (2) his job performance met with Norfolk's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated others not in his protected class received more favorable treatment. *Everroad v. Scott Truck Sys.,* 604 F.3d 471, 477 (7th Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. at 802). Norfolk argues that Thomas fails to satisfy the second element because Thomas failed to show that his job performance met with Norfolk's legitimate job expectations, and the fourth element because Thomas failed to show that others outside the protected class received more favorable treatment.

The Court agrees. First, Norfolk argues that Thomas's job performance leading up to his termination did not meet with Norfolk's legitimate expectations because Thomas violated Norfolk's safety and operating rules by occupying a main track without authority. R. 25, Def.'s Br. at 3. Thomas does not dispute that (1) he was required to comply with the Tabular General Bulletin Orders of other railroads when traveling over foreign tracks; (2) he received a copy of Canadian National's Bulletin Order for his job on May 11, 2009; and (3) the Bulletin Order stated that he must contact a Canadian National employee before entering a certain protected area of the track. PSOF ¶¶ 9, 17, 18. Nor has Thomas reasonably put in dispute that he violated

the Bulletin Order by taking his train onto the protected track without seeking permission from a Canadian National employee. *See* PSOF ¶ 21 (claiming that Norfolk's allegation that Thomas violated the Bulletin Order is "misleading"). Thomas asserts that the Bulletin Order "[did] not pertain to the track that [he] was on." *Id.* ¶ 21. He proffers two pieces of evidence in support of this assertion (some lines from his deposition testimony and a handwritten letter authored by him), but neither one actually explains what about the Bulletin Order led him to believe that he was in the clear. *Id.*; R. 30-2, Exh. 1 to Thomas Dep.(handwritten letter); *see also* R. 30, Pl.'s Stat. Add'l Facts (PSOAF) ¶¶ 10, 11. In his response brief, Thomas makes other vague and conclusory allegations that any "issues of discipline" in his employment file were fabricated, but again he fails to support these allegations with any admissible evidence. R. 29, Pl.'s Resp. Br. at 8. It is perfectly acceptable to offer evidence based on Thomas's own personal knowledge, but what he offers must be admissible evidence rather than general conclusions. He has failed to do that.

Even if Thomas had enough evidence to persuade a reasonable jury that he was meeting Norfolk's legitimate expectations, he cannot show that Norfolk's proffered justification for his dismissal—that Norfolk[8] believed Thomas committed a violation subject to termination—was pretextual. *See* Def.'s Br. at 6. Norfolk investigated the events of May 11, 2009, and made the decision to terminate Thomas because it

---

[8]When the Opinion refers to Norfolk as making the decision to fire Thomas, the Court is referring to Brad A. Nixon, the decision maker identified by Norfolk. *See* DSOF ¶ 25. Thomas does not dispute that Nixon made the decision to fire Thomas. *See* PSOF ¶ 25.

determined that Thomas occupied a main track without authority. DSOF ¶ 25.[9]

Thomas presents *no* evidence from which the Court could infer that Norfolk's decision to fire Thomas was pretextual; instead, Thomas relies on generic statements of law ungrounded in any facts specific to this case. *See* Pl.'s Resp. Br. at 10. If "substantial, undisputed information in the record" supports an employer's contention that the employee was violating company policy, that is enough to support a finding that the discriminatory reason was not the but-for cause of the termination. *Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th Cir. 2010). It would be one thing if it were clear that Thomas did not violate the Bulletin Order; the dubiousness of the proffered reason for the firing might itself be enough to cast doubt on whether Norfolk genuinely believed that the Bulletin Order barred what Thomas did. But, as discussed above, Thomas does not explain how an engineer could interpret the Bulletin Order to exclude what Thomas did, which was to travel onto the track in a work project protection area.

Moving on, Thomas also failed to establish the fourth element—that other similarly situated employees not in Thomas's protected class (younger Norfolk employees) were treated differently under similar circumstances. In his response, Thomas fails to set out *any* relevant comparators to support his ADEA claim, stating

---

[9]In a later arbitration, the Special Board of Adjustment found the violation of the Bulletin Order to be supported by "substantial evidence." *Id.* ¶¶ 35-36. Norfolk argues that Thomas is estopped from challenging the Board's finding. Def.'s Br. at 6 (citing *Oden v. Norfolk S. Ry. Co.*, 1997 WL 842407, at *4 n.3 (N.D. Ala. Nov. 25, 1997)). The Court is skeptical of Norfolk's estoppel argument, but Thomas failed to rebut the argument in his response and he has therefore waived the right to challenge it. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (holding that plaintiffs waived the right to challenge defendant's assertion of statute of limitations defense by failing to oppose the argument in their response brief).

only: "[P]laintiff can present evidence that there is something 'fishy' about the facts at hand. A reading of the statement of facts leads one to question all the attention that Plaintiff was receiving." Resp. Br. at 13 (citation omitted). "Fishiness," without facts, or without an explanation as to why Thomas thinks the facts are fishy, falls short of presenting a prima facie case under the fourth prong. The best that Thomas does is in the race-discrimination section of his brief, where he identifies *one* Norfolk employee, Robert Cowgill, "who was under 40 who was treated better in discipline for a similar offense." *Id.* at 9. But as Norfolk proved, and Thomas does not deny, the "similar offense" for which Cowgill received a 30-day suspension occurred in 2005, *before* Norfolk changed its policy on how to punish occupying a main track without authority. DSOF ¶¶ 15, 52. In order to rely on an individual as a comparator in an employment discrimination action, that individual must be similarly situated to the plaintiff; not exactly situated, but similar. "In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case . . . This normally entails a showing that the two employees dealt with the same supervisor, *were subject to the same standards,* and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-8 (7th Cir. 2000) (emphasis added); s*ee also Lim v. Trustees of Indiana Univ.*, 297 F.3d 575, 581 (7th Cir. 2002). Cowgill is not a relevant comparator for Thomas's ADEA claim because Cowgill was not subject to the same

policy as Thomas.[10] Thomas fails to address the impact of the policy change in his brief, or explain why, despite the change, Cowgill is still somehow a relevant comparator.

Not only did Thomas fail to present a relevant comparator, he failed to defend against relevant comparators offered by Norfolk to rebut an inference of age discrimination. For example, Norfolk pointed out that Ricky Connelley, who was nine years younger than Thomas, was also fired based on the same incident. Def.'s Br. at 4. Thomas failed entirely to address Connelley as a comparator in his response brief. Norfolk also proved that Kevin Davis, an engineer three years younger than Thomas, was fired for the same violation three months before Thomas. *Id*. at 5.[11] Again, Thomas failed to address Davis as a comparator. Because Thomas failed to address any of Norfolk's additional comparators, the Court considers any arguments as to their non-comparability to be waived.

Perhaps recognizing that he has no relevant-comparator evidence, Thomas argues that comparator evidence is not necessary, and instead, all that is necessary is a "logical connection" between the firing and the discriminatory motive. Pl.'s Resp. Br. at 9 (citing *Leffel v. Valley Fin. Services*, 113 F.3d 787 (7th Cir. 1997)). Even were the standard from *Leffel* controlling, Thomas has not met that standard. *Leffel* held that

---

[10]Thomas also admits that Cowgill was not supervised by, or fired by, the same Norfolk employees as Thomas—Jason Charbonneau and Brad A. Nixon. *See* DSOF ¶ 65; PSOF ¶ 65. This further distinguishes Cowgill as a relevant comparator.

[11]Norfolk also identifies Charles Taylor and Johnnie Golston, two individuals who received similar 30-day suspensions prior to the policy change. Both individuals were older than Thomas when they were disciplined. Def.'s Br. at 5, n.2.

a plaintiff "is not required to make out a prima facie case, so long as there is *some evidence* from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion." *Id.* at 793 (citations omitted) (emphasis added). But there is *no* admissible evidence of a connection between Thomas's firing and his age (or, as discussed below, race). What's more, the Seventh Circuit has moved away from *Leffel* and "returned to applying the unadulterated version of the fourth prong, which requires the court to reject a discrimination claim where a plaintiff cannot show that her employer treated similarly situated employees outside of her protected class more favorably." *Jackson v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.,* 2010 WL 2574217, at *9 (N.D. Ill. June 22, 2010) (citing *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), and *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 592 (7th Cir. 2009)). Proper comparator evidence is still required for a plaintiff to make out a prima facie case for discrimination, and Thomas has failed to provide it. Because he is unable to make a prima facie case for age discrimination, and does not take any other approach to raise an inference of discrimination,[12] Norfolk's motion for summary judgment on Thomas's ADEA claim is granted.

## B.

As with Thomas's ADEA claim, to avoid summary judgment on his Title VII race discrimination claim, Thomas may use either the direct method or indirect method of

---

[12]There is all sorts of circumstantial evidence that can be sufficient to raise an inference of discrimination, *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012), but Thomas does not argue that he is taking any of those approaches here.

proof under the *McDonnell Douglas* framework. *See Naik v. Boehringer Ingelahim Pharm.*, 627 F.3d 596, 599 (7th Cir. 2010); *Egonmwan*, 602 F.3d at 849-50. To succeed under the direct method, Thomas "must offer either direct evidence that would prove the fact in question—the discriminatory intent—without reliance on inference or presumption, or a 'convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Silverman v. Board of Educ. of City of Chicago*, 637 F.3d 729, 733-34 (7th Cir. 2011) (internal citations omitted).

Thomas makes a half-hearted attempt in his brief to establish racial discrimination under the direct method, in what appears to be a boilerplate response to summary judgment motions, stating "Plaintiff asserts that she [sic] can present direct evidence in the form of testimony set [sic] in her [sic] statement of additional facts." Pl.'s Resp. Br. at 6. But the only "evidence" that Thomas presents to support a case based on direct evidence is that Thomas

> *believed* that he was being racially discriminated against by Defendant when Plaintiff was the only employee that wasn't able to be placed on the 'extra board' after being pumped off of a job because of seniority which Plaintiff *believed*, based upon experience at [Norfolk], never happened to non-black employees.

*Id.* (emphases added). Thomas argues that "[t]he order and temporal proximity of this sequence of events provides a 'convincing mosaic'" to defeat summary judgment on his Title VII discrimination claims. *Id.* But where are the specific facts that support Plaintiff's beliefs? Thomas does not actually cite to them. Although Thomas fails to supply specific details on the "extra board" contention, the Court's own examination

of Thomas's deposition and the associated exhibits reveals that Thomas complained about the issues in a letter in 2004. *See* R. 26-2, Thomas Dep. at 193-96; R. 26-3, Exh. 41 to Thomas Dep. In the 2004 letter, Thomas refers to his "attitude" as a possible reason "for what's happening to [him]," and then he "apologize[s] to anyone in the office who feels this way because we all have bad days." Exh. 41 to Thomas Dep. There is no mention of race discrimination, nor does the letter describe facts or admissible evidence from which to infer race discrimination. So the letter and Thomas's belief, not grounded in facts of which he has proof or personal knowledge, that the "extra board" issues were a result of a racially-discriminatory policy adopted by Norfolk are insufficient to establish a "convincing mosaic" from which a reasonable jury could infer intentional discrimination by Norfolk. *Silverman*, 637 F.3d at 734; *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1118 (7th Cir. 2009) ("Under the direct method, the inference that the employer acted based on the prohibited animus has to be substantially strong.").[13]

Thomas also attempts to defeat summary judgment on his Title VII claim under the indirect method of proof. To do so, Thomas must establish the same four elements (but with race as the protected class) of the *McDonnell Douglas* framework that he failed to establish for his ADEA claim. *Naik*, 627 F.3d at 599-600 (applying the

---

[13]Thomas also wrote a letter to Norfolk's superintendent in 2002, alleging racial discrimination. *See* R. 26-3, Exh. 35 to Thomas Dep. But Thomas never referenced this letter in his response brief or his statement of additional facts, and fails to explain the details regarding this allegation of discrimination. In addition, Norfolk argues that Thomas's claims for conduct that occurred in 2002 are so temporally attenuated from his current claim that they are barred as untimely. *See* Def.'s Br. at 12 (citing *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004)). Thomas failed to rebut Norfolk's argument in his response and he has therefore waived the right to challenge it. *See Wojtas,* 477 F.3d at 926.

*McDonnell Douglas* framework to both ADEA and Title VII claims). Just like with Thomas's ADEA claim, the only dispute between the parties is whether Thomas can satisfy the second element (whether Thomas was meeting Norfolk's legitimate expectations) and the fourth element (whether similarly situated non-African American employees were treated more favorably).

On the legitimate expectations element, the analysis on the ADEA claim for this element applies with equal force to Thomas's Title VII claim. The same facts show that Thomas failed to meet Norfolk's job-related expectations on May 11, 2009, when he violated the Bulletin Order.

Turning to the fourth element of the *McDonnell Douglas* test, Thomas identifies five Caucasian employees in his brief who he argues were treated more favorably than him. Pl.'s Resp. Br. at 9. First up is Robert Cowgill. But, as explained when discussing the age claim, Cowgill was more leniently punished for a similar offense in 2005 because that was *before* Norfolk modified the disciplinary policy for occupying a main track without authority.[14] Thomas fails to explain why, given this important difference, Cowgill is still a relevant comparator. Thomas next offers four others: Kevin Davis, Charles Taylor, Otty Barringer, and Steve Young. But as Norfolk proves, and Thomas fails to refute, these individuals do not demonstrate that other Caucasian employees were treated more favorably: Davis was also fired for a similar offense just three months before Thomas; Taylor was suspended in 2004 for a similar offense, but that

---

[14]As explained above in note 9, Cowgill is further distinguished as a relevant comparator because he was not supervised by, or fired by, the same Norfolk employees as Thomas.

was before the policy change; and Barringer and Young received 30-day and 15-day suspensions, respectively, back in 1999, again well before the policy change.[15] *See* R. 31, Def.'s Reply Br. at 7-8; DSOF ¶¶ 61-63. So Thomas has failed to identify any relevant comparators to establish the fourth element of the *McDonnell Douglas* analysis for his Title VII race discrimination claim. *See Radue*, 219 F.3d at 617-18; *Lim*, 297 F.3d at 581.

Given Thomas's failure to put forth any relevant evidence that Caucasian employees received more favorable treatment, Norfolk need not have introduced contrary evidence. But Norfolk did, and Thomas failed to refute it, making summary judgment all the more warranted. Ricky Connelley, the engineer fired at the same time as Thomas for the same offense because they were working on the same train, is a Caucasian male. Def.'s Reply Br. at 6, n.4; DSOF ¶ 17. This by itself casts significant doubt on Thomas's ability to establish a prima facie case of race discrimination based on his termination. It is telling that Thomas's response brief does not address, at all, the impact of Connelley's simultaneous firing. Norfolk also points out that Johnnie Golston, an African-American employee, was suspended for 30 days (a lesser punishment than Thomas received) following a similar incident in 2004. Def.'s Br. at 8; DSOF ¶ 60. Again, Thomas failed to address Golston in his response brief. And for the reasons explained above, Thomas's argument, citing *Leffel*, that comparator evidence is not required is rejected. Even if his argument that *Leffel*

---

[15]Three of these four individuals (Taylor, Barringer, and Young) were also supervised by, and fired by, different Norfolk employees. *See* DSOF ¶ 65; PSOF ¶ 65.

articulates a lesser burden were accepted, the only other evidence of race discrimination Thomas supplies is his claim that he was subjected to an "excessive work load requirement" and a "racial and hostile work environment" because of his race. Pl.'s Resp. Br. at 9. But Thomas presents no specific facts to support either of these contentions or to relate them to his termination. It bears repeating that, of course, Thomas could conceivably resist summary judgment with evidence based on his own personal knowledge, but specifics are needed. To understand this point, consider whether Thomas could simply testify at trial that he had an "excessive work load requirement" and was subjected to a "racial and hostile work environment"—and that is all, no actual specifics. Those are conclusions without facts, and would not be admissible on their own to prove discrimination. Thomas fails to satisfy the fourth element of the *McDonnell Douglas* framework. *See Keller v. Indiana Family & Social Servs. Admin.*, 388 Fed. Appx. 551, 553 (7th Cir. 2010) (affirming dismissal of Plaintiffs' Title VII claim where their "conclusory statements" were not backed by any evidence).

Because Thomas has not shown a prima facie case for race discrimination, Norfolk's motion for summary judgment on Thomas's Title VII race discrimination claim is granted.

## C.

Thomas also alleges that Norfolk intentionally retaliated against him based on his filing of prior complaints of race discrimination. Compl. at 4-5. Title VII forbids an employer from retaliating against an employee who "opposed any practice" prohibited

by Title VII or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). "The antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry Co. v. White,* 548 U.S. 53, 68 (2006) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346 (1997)). To establish a prima facie claim of retaliation, "the plaintiff must demonstrate that, but for his protected speech, the employer would not have taken the adverse action." *Kidwell v. Eisenhauer,* 679 F.3d 957, 965 (7th Cir. 2012). "Like discrimination, retaliation may be established by either the direct or indirect methods of proof." *Coleman v. Donahoe,* 667 F.3d 835, 859 (7th Cir. 2012) (citations omitted).

Under the direct method of proof, Thomas must show: (1) that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) there was a causal link between the two. *Silverman,* 637 F.3d at 740 (7th Cir. 2011); *see also Leitgen v. Fransciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 673 (7th Cir. 2011). Regarding the first prong, it is undisputed that Thomas made a number of complaints to his supervisors between 1999 and 2008 about what he considered to be unfair treatment. DSOF ¶¶ 66-79. However, the issue is whether Thomas engaged in *protected* activity, that is, whether he complained about racial discrimination. Citing his deposition transcript, Thomas states that he complained on "many occasions" to his Norfolk supervisorsPSOAF ¶ 20. In his deposition, Thomas

18

stated that he "typed a letter to [Norfolk's] Superintendent [about racial discrimination]" and that he "probably sent a letter to [his] Road Foreman," but that he does not recall complaining to any other Norfolk employee. Thomas Dep. at 171:19-172:3. But Thomas does not specify the year these letters were sent, and does not identify any exhibits to support his claim. *See id.* at 171-173. According to Norfolk, Thomas provided evidence of only three letters to the Superintendent and/or Road Foreman, dated 2001, 2002 and 2004. R. 32, Def.'s Resp. to Pl.'s Stat. Add'l Facts (DSOAF) ¶ 20. The letters that Norfolk identifies did not allege racial discrimination. *See id.* ¶ 20; R. 26-3, Exhs. 36, 37 and 41 to Thomas Dep. In fact, there is a letter in the record (though Thomas did not specifically point to it in his filings) that shows Thomas complained of racial discrimination. Thomas sent one letter to the Norfolk Superintendent in 2002 that alleged that he was receiving assignments with "extra board" (meaning, extra work) because of his race. R. 26-3, Exh. 35 to Thomas Dep. Thomas also submitted a letter in support of a lawsuit (so this was not a letter to a supervisor) against Norfolk in 2001 in which he alleged race discrimination. DSOF ¶ 67; PSOAF ¶ 21. But, as explained below, the length of time between these letters and Thomas being fired (about seven years) was far too great to support an inference of retaliation by Norfolk based on Thomas's protected activity.

Even assuming that Thomas can show that he engaged in a statutorily protected activity, Thomas has not shown that a jury could reasonably find a causal connection between that activity and his firing in May of 2009. First, Thomas has presented no evidence that the individuals making the employment decision had any knowledge of

Thomas's earlier complaints. "The key inquiry in determining whether there is a causal connection under the direct method is whether [the employer] was aware of the allegations of discrimination at the time of [its] decision to . . . terminate [the employee's] employment; absent such knowledge, there can be no causal link between the two." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) (citations omitted). Thomas neither alleges nor supports with admissible evidence that the Norfolk employee responsible for the termination was aware of Thomas's prior complaints. In addition, Thomas's earlier complaints and the adverse employment action were temporally attenuated. Thomas's most recent complaint to Norfolk was in April 2008, but there is no evidence that complaint involved allegations of racial discrimination. *See* DSOF ¶ 75; R. 26-3, Exh. 43 to Thomas Dep. As discussed, the most recent complaint by Thomas of racial discrimination was in 2002. Even when the evidence is viewed in his favor, Thomas has not shown a causal connection between his complaint in 2002 and his firing in 2009. *See Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001) ("[W]e have relied heavily on temporal proximity when analyzing retaliation claims [under the direct method of proof]; specifically, a 'substantial time lapse . . . is counter-evidence of any causal connection.'" (citations omitted) (ellipses in original)); *Lalvani v. Cook County, Illinois*, 269 F.3d 785, 790 (7th Cir. 2001) ("As the time separating the protected conduct and the adverse employment action grows, the causal inference weakens and eventually time becomes the plaintiff's enemy.")

Moreover, the same reasons that Thomas's discrimination claims failed under the indirect method apply to defeat his retaliation claim. Like with his discrimination claims, to survive summary judgment on the retaliation claim, Thomas must show that he met Norfolk's legitimate job expectations and that Norfolk treated him less favorably than similarly situated employees who did not engage in statutorily protected activities. *Silverman,* 637 F.3d at 742. For the reasons explained earlier, Thomas has not shown that he performed his job according to Norfolk's legitimate expectations. Furthermore, the record is entirely devoid of any evidence that there were similarly situated employees who did not complain about racial discrimination that were treated more favorably than Thomas. Therefore, Thomas also fails to prove his retaliation claim under the indirect method of proof. Accordingly, the Court grants Norfolk's motion for summary judgment on Thomas's retaliation claim.

## IV.

In his complaint, Thomas alleged that Norfolk created a hostile work environment, but failed to plead it as a separate claim independent of his retaliation claim, even though the claims are subject to different legal standards. Compl. at ¶¶ 24-275. In any event, even if a hostile work environment claim is in the case, summary judgment on it is required. To prevail on a hostile work environment claim, Thomas must establish that his work environment "was both objectively and subjectively offensive—that is, 'one that a reasonable person would find hostile or abusive, and one that [Thomas] in fact did perceive to be so.'" *Ellise v. CCA of Tennessee LLC*, 650 F.3d 640, 647 (7th Cir. 2011) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787

(1998)). In its opening motion, Norfolk addressed this standard and the hostile work environment claim extensively. *See* Def.'s Br. at 12-14. But Thomas does not discuss the hostile work environment claim in his response brief. Not at all. Therefore, Thomas's hostile work environment claim is deemed waived.[16]

## V.

Because the Court grants Norfolk's motion for summary judgment, there is no need to address Norfolk's claim that Thomas failed to mitigate his damages by not attempting to find comparable employment. Def.'s Br. at 14-15. For the reasons stated above, Norfolk's motion for summary judgment [R. 24] is granted.


ENTERED:


    s/Edmond E. Chang    
Honorable Edmond E. Chang
United States District Judge


DATE: March 4, 2013

---

[16] Because Thomas failed to address the hostile work environment claim in his brief, the Court does not address the question of whether or not the supposed hostile work environment was sufficiently severe and pervasive. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).